RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
MATTHEW A. HOFFMAN, SBN 227351
  mhoffman@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
DANIEL R. ADLER, SBN 306924
  dadler@gibsondunn.com
KENNETH OSHITA, SBN 317106
  koshita@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

Attorneys for Plaintiff LEXINGTON
INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>MARTIN A. MUELLER, in his official capacity as Judge for the Cabazon Reservation Court; MATTHEW L.M. FLETCHER, in his official capacity as Judge of the Cabazon Reservation Court of Appeals; ALEX SKIBINE, in his official capacity as Judge of the Cabazon Reservation Court of Appeals; KEVIN K. WASHBURN, in his official capacity as Judge of the Cabazon Reservation Court of Appeals,<br><br>                    Defendants. | CASE NO.  5:22-cv-00015-JWH-KK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: May 6, 2022<br>Hearing Time: 9:00 a.m.<br>Hon. John W. Holcomb |

Gibson, Dunn &
Crutcher LLP

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 6, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable John W. Holcomb, United States District Judge of the Central District of California, located at 3470 Twelfth Street, Riverside, CA 92501-3801 in Courtroom 2, or by remote conferencing as directed by the Court, Plaintiff Lexington Insurance Company will and hereby does move the Court to issue a preliminary injunction against the Defendants Martin A. Mueller, Matthew L.M. Fletcher, Alex Skibine, and Kevin K. Washburn in their official capacities as judicial officers of the Cabazon Band of Mission Indians and its Tribal Courts.

This Motion is based on the Notice of Motion and Memorandum of Points and Authorities, Declaration of Matthew A. Hoffman in support of Plaintiff's Motion for Preliminary Injunction, Appendix of Certain Authorities in support of Plaintiff's Motion for Preliminary Injunction, Plaintiff's Complaint, and other matters that this Court may consider.

Dated:  March 4, 2022

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: _____
                    Richard J. Doren
                    Matthew A. Hoffman
                    Bradley J. Hamburger
                    Daniel R. Adler
                    Kenneth Oshita

Attorneys for Plaintiff LEXINGTON
INSURANCE COMPANY

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF CONTENTS

2

Page

3    I.    Introduction ......................................................................................... 1

4    II.   Factual and Procedural Background....................................................... 5

5          A.    The Parties and the Underlying Insurance Contracts................................ 5

6          B.    The Tribe's COVID-19-Related Insurance Claims ................................. 7

7          C.    The Tribal Court Action and Exhaustion of Tribal Remedies.................. 8

8    III.  Legal Standard ...................................................................................... 9

9    IV.   Argument .............................................................................................. 10

10         A.    Lexington Is Likely to Prevail on the Merits and Has Raised
                 "Serious Questions" as to the Tribal Court's Jurisdiction ...................... 10

11
                 1.    The *Montana* Exceptions Do Not Apply ...................................... 11
12
                       a.    The First *Montana* Exception Does Not Apply ................. 11
13
                       b.    The Second *Montana* Exception Does Not Apply .............. 15
14
                       c.    The Exercise of Tribal Jurisdiction Does Not Stem
15                           from the Tribe's Inherent Sovereign Authority.................. 15

16               2.    The Right to Exclude Does Not Apply ........................................... 20

17         B.    Lexington Will Continue to Suffer Irreparable Harm if Defendants
                 Are Not Enjoined ...................................................................................... 23
18
           C.    If They Are Enjoined, the Defendants Will Suffer No Serious
19               Injury ......................................................................................................... 24

20         D.    An Injunction Against Defendants Is in the Public Interest ................... 25

21   V.    Conclusion ............................................................................................... 25

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*10012 Holdings, Inc. v. Sentinel Ins. Co.*,
   21 F.4th 216 (2d Cir. 2021) ................................................................. 2

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ........................................................... 9

*Atkinson Trading Co. v. Shirley*,
   532 U.S. 645 (2001)........................................................................... 10

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ........................................................... 25

*Brown Jug, Inc. v. Cincinnati Ins. Co.*,
   --- F.4th ----, 2022 WL 538221 (6th Cir. 2022) ............................... 2

*Buster v. Wright*,
   135 F. 947 (8th Cir. 1905) ................................................................. 12

*Cabazon Band of Mission Indians v. Lexington Ins. Co.*,
   Case No. 2020-0103 ........................................................................... 8

*Crowe & Dunlevy, P.C. v. Stidham*,
   640 F.3d 1140 (10th Cir. 2011) ................................................... 24, 25

*Deer Mountain Inn LLC v. Union Ins. Co.*,
   2022 WL 598976 (2d Cir. Mar. 1, 2022) ........................................ 2

*Elliott v. White Mountain Apache Tribal Court*,
   566 F.3d 842 (9th Cir. 2009) ............................................................. 8

*Emp'rs Mut. Cas. Co. v. Branch*,
   381 F. Supp. 3d 1144 (D. Ariz. 2019) ............................................. 22

*Emp'rs Mut. Cas. Co. v. McPaul*,
   804 F. App'x 756 (9th Cir. 2020)........................................... 3, 4, 21

*Estes v. Cincinnati Ins. Co.*,
   23 F.4th 695 (6th Cir. 2022) ............................................................. 2

*Ford Motor Co. v. Todecheene*,
    488 F.3d 1215 (9th Cir. 2007) ................................................................. 8

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
    2021 WL 3870697 (11th Cir. 2021) .......................................................... 2

*Goodwill Indus. of Cent. Oka., Inc. v. Phil. Indem. Ins. Co.*,
    21 F.4th 704 (10th Cir. 2021) ................................................................... 2

*Grand Canyon Skywalk Dev. v. 'SA' Nyu Wa Inc.*,
    715 F.3d 1196 (9th Cir. 2013) ................................................................. 21

*Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*,
    133 F.3d 1087 (8th Cir. 1998) ................................................................. 13

*Inns by the Sea v. Cal. Mut. Ins. Co.*,
    71 Cal. App. 5th 688, 286 Cal. Rptr. 3d 576 (2021) ................................. 2

*Iowa Mut. Ins. Co. v. LaPlante*,
    480 U.S. 9 (1987) ...................................................................................... 8

*Jackson v. Payday Fin., LLC*,
    764 F.3d 782 (7th Cir. 2014) ..................................................... 13, 14, 15, 16, 19

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003) ................................................................... 25

*Kerr-McGee Corp. v. Farley*,
    88 F. Supp. 2d 1219 (D.N.M. 2000) ....................................................... 24

*Kim-Chee, LLC v. Philadelphia Indem. Ins. Co.*,
    2022 WL 258569 (2d Cir. Jan 28, 2022) ................................................... 2

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*,
    523 U.S. 751 (1998) ................................................................................ 24

*Knighton v. Cedarville Rancheria of Northern Paiute Indians*,
    922 F.3d 892 (9th Cir. 2019) ................................................................... 21

*Kodiak Oil & Gas (USA) Inc. v. Burr*,
    932 F.3d 1125 (8th Cir. 2019) ....................................................... 4, 16, 18, 24

*Koniag, Inc. v. Kanam*,
    2012 WL 2576210 (D. Alaska July 3, 2012) ..................................... 23, 25

Gibson, Dunn &
Crutcher LLP

iii

*McCoy v. Salish Kootenai Coll., Inc.*,
 785 F. App'x 414 (9th Cir. 2019) .................................................................... 24

*McKesson Corp. v. Hembree*,
 2018 WL 340042 (N.D. Okla. Jan. 9, 2018) .............................. 23, 24, 25

*Menominee Indian Tribe of Wisconsin, v. Lexington Ins. Co.*,
 No. 21-CV-00231-WHO, 2021 WL 3727070 (N.D. Cal. Aug. 23, 2021) .............. 18

*Merrion v. Jicarilla Apache Tribe*,
 455 U.S. 130 (1982) ........................................................................................ 22

*Michigan v. Bay Mills Indian Cmty.*,
 572 U.S. 782 (2014) ..................................................................................... 1, 3

*Montana v. United States*,
 450 U.S. 544 (1981) ................................................... 3, 10, 11, 15, 16, 22

*Moroccanoil, Inc. v. Zotoz Int'l, Inc.*,
 230 F. Supp. 3d 1161 (C.D. Cal. 2017) ..................................................... 10

*Morris v. Hitchcock*,
 194 U.S. 384 (1904) ........................................................................................ 12

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
 15 F.4th 885 (9th Cir. 2021) .......................................................................... 2

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
 471 U.S. 845 (1985) ......................................................................................... 8

*Nevada v. Hicks*,
 533 U.S. 353 (2001) ....................................................................... 11, 12, 17

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
 2 F.4th 1141 (8th Cir. 2021) .......................................................................... 2

*Philip Morris USA, Inc. v. King Mountain Tobacco Co.*,
 569 F.3d 932 (9th Cir. 2009) ....................................................................... 13

*Plains Commerce Bank v. Long Family and Cattle Co.*,
 554 U.S. 316 (2008) ........................... 2, 3, 10, 11, 12, 14, 15, 16, 17, 19

*Ragged Point Inn v. State Nat'l Ins. Co.*,
 2021 WL 4391208 (C.D. Cal. Sept. 24, 2021) ........................................... 1

Gibson, Dunn &
Crutcher LLP

*Rolling Frito-Lay Sales LP v. Stover*,
  2012 WL 252938 (D. Ariz. Jan. 26, 2012) .......................................................... 24, 25

*Rye Ridge Corp. v. Cincinnati Ins. Co.*,
  2022 WL 120782 (2d Cir. Jan. 13, 2022) .............................................................. 2

*San Manuel Indian Bingo and Casino v. NLRB*,
  475 F.3d 1306 (D.C. Cir. 2007) ............................................................................ 22

*Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*,
  20 F.4th 327 (7th Cir. 2021) ................................................................................. 2

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
  15 F.4th 398 (6th Cir. 2021) ................................................................................. 2

*Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*,
  807 F.3d 184 (7th Cir. 2015) .................................... 4, 13, 14, 15, 17, 19, 23

*Strate v. A-1 Contractors*,
  520 U.S. 438 (1997) ........................................................................... 12, 16, 19

*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*,
  22 F.4th 450 (5th Cir. 2022) ................................................................................. 2

*UNC Resources, Inc. v. Benally*,
  518 F. Supp. 1046 (D. Ariz. 1981) ...................................................................... 23, 25

*United States v. Cooley*,
  141 S. Ct. 1638 (2021) ............................................................................ 10, 11, 12

*United States v. Wheeler*,
  435 U.S. 313 (1978) ................................................................................................ 10

*Washington v. Confederated Tribes of Colville Indian Rsrv.*,
  447 U.S. 134 (1980) ................................................................................................ 12

*Washington v. Tribal Ct. for Confederated Tribes & Bands of Yakama Nation (Yakama)*,
  2013 WL 139368 (E.D. Wash. Jan. 10, 2013) ........................................ 5, 23, 24, 25

*Water Wheel Camp Rec. Area, Inc. v. LaRance*,
  642 F.3d 802 (9th Cir. 2011) ...................................................................... 3, 20, 21

*Williams v. Lee*,
  358 U.S. 217 (1959) ........................................................................................ 12, 17

1

2

*Winter v. Natural Resources Defense Council, Inc.*,
      555 U.S. 7 (2008)..................................................................................... 9

3

*Yurok Tribe v. Lexington Ins. Co.*,
      No. CV2100805 (Cal. Super. Ct., Oct. 19, 2021)....................................... 18

4

5

**STATUTES**

6

15 U.S.C. § 1011 ............................................................................................... 18

7

Cal. Ins. Code §§ 12919–13555 ....................................................................... 18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

Over a year ago, the Cabazon Band of Mission Indians ("the Tribe") sued Lexington Insurance Company ("Lexington") in its own tribal court to obtain coverage for the business income it had lost at the beginning of the COVID-19 pandemic.  The central problem with that lawsuit—which has prompted this second litigation—is that the tribal court has no jurisdiction over nonmember Lexington, and the time and money Lexington continues to spend litigating in tribal court is causing it irreparable harm.  This Court can and should intervene and halt the tribal court litigation in its tracks.

Tribal courts have limited jurisdiction and generally decide only disputes between members of the relevant tribe.  They may adjudicate disputes involving nonmembers only in rare cases.  The Tribe's insurance dispute is not such a case, yet the tribal court continues to exercise jurisdiction over nonmember Lexington, in violation of federal law.  This Court has the authority to, and should, enjoin tribal judicial officials from continuing to violate federal law in this way.  *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 796 (2014).   Specifically, Lexington asks this Court to enjoin Defendants—the judicial officials of the Tribe and its tribal courts, the Cabazon Reservation Court (the "Tribal Court") and the Cabazon Reservation Court of Appeals (the "Tribal Court of Appeals")—from continuing to subject Lexington to the unlawful exercise of tribal jurisdiction over it.

Policyholders have filed hundreds of cases across the country over pandemic-related business-income losses just like those alleged by the Tribe, and state and federal courts have dismissed the vast majority of their claims.  As one court in this District has held, a "consensus" has formed that "where an insurance policy preconditions coverage on a 'direct physical loss of or damage to' property, economic business impairments caused by COVID-19 and related safety orders do not fall within the scope of coverage." *Ragged Point Inn v. State Nat'l Ins. Co.*, 2021 WL 4391208, at *4 (C.D. Cal. Sept. 24, 2021).  Similarly, the Ninth Circuit has held that mere loss of use is insufficient to trigger coverage where a property insurance policy requires "direct physical loss of or damage

to" property, as "intangible," "incorporeal," or "economic" losses are distinguishable from "physical" ones.  *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 891 (9th Cir. 2021).  Every other federal court of appeals to address the same question has answered it the same way.[1]  And in a decision that, like *Mudpie*, applied California law, the California Court of Appeal confirmed that the "mere loss of use of physical property to generate income, without any other physical impact to property" does not constitute direct physical loss.  *Inns by the Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688, 286 Cal. Rptr. 3d 576, 591 (2021).  The substance of the Tribe's case is identical to those of other cases.  The only difference is where this case was brought:  Tribal Court.

That court is not a proper forum for the Tribe's insurance claims.  Because Indian tribes exist in the United States as "distinct, independent political communities" with limited sovereign powers, their authority is confined to "the land held by the tribe" and to "tribal members"—tribal authority does not, as a general matter, extend to "non-Indians who come within their borders."  *Plains Com. Bank v. Long Family and Cattle Co.*, 554 U.S. 316, 327 (2008).  As a result, tribal courts *presumptively* lack jurisdiction over nonmembers of the tribe, and only in exceptional circumstances may a tribal court exercise jurisdiction over a nonmember.  The Supreme Court recognizes two such circumstances, the *Montana* exceptions, and the Ninth Circuit also recognizes a third, the right to exclude doctrine.  The *Montana* exceptions authorize the exercise of tribal court jurisdiction over a nonmember when (1) the nonmember's conduct arises from a

---

[1] *See Mudpie, Inc. v. Travelers Casualty Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 221–22 (2d Cir. 2021); *Kim-Chee, LLC v. Philadelphia Indem. Ins. Co.*, 2022 WL 258569 (2d Cir. Jan 28, 2022); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, 2022 WL 120782, at *1 (2d Cir. Jan. 13, 2022); *Deer Mountain Inn LLC v. Union Ins. Co.*, 2022 WL 598976, at *3 (2d Cir. Mar. 1, 2022); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 453 (5th Cir. 2022); *Goodwill Indus. of Cent. Oka., Inc. v. Phil. Indem. Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 333 (7th Cir. 2021); *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695, 700 (6th Cir. 2022); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021); *Brown Jug, Inc. v. Cincinnati Ins. Co.*, --- F.4th ----, 2022 WL 538221, at *1 (6th Cir. 2022); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, 2021 WL 3870697, at *2 (11th Cir. 2021).

Gibson, Dunn &
Crutcher LLP

2

consensual relationship with the tribe or its members or (2) the nonmember's conduct imperils the tribe's political or economic well-being. *Montana v. United States*, 450 U.S. 544, 565–66 (1981). And the right to exclude doctrine holds that because tribes have the power to exclude nonmembers from their land, they also have "the lesser authority to set conditions on their entry through regulations." *Water Wheel Camp Rec. Area, Inc. v. LaRance*, 642 F.3d 802, 811 (9th Cir. 2011) (per curiam).

These exceptions apply rarely, and not in this case. *Montana* permits tribal jurisdiction only when a nonmember's conduct took place "on the land," within the territorial boundaries of a tribe, and only when the exercise of such jurisdiction is essential to protect tribal self-government and control internal relations. *Plains Com.*, 554 U.S. at 334, 336-37. Similarly, the right to exclude doctrine applies only when nonmembers have physically entered or engaged in activity on tribal land. *Emp'rs Mut. Cas. Co. v. McPaul*, 804 F. App'x 756, 757 (9th Cir. 2020).

If a tribe imposes its adjudicatory authority on nonmembers absent any nonmember activity on tribal land, federal courts are empowered to enjoin the tribe's officials. *See Bay Mills*, 572 U.S. at 796. This Court should exercise that power here. Although Lexington provides insurance coverage for the Tribe's property, it has never entered, or engaged in related activity on, *tribal land*. Contractual relationships alone are not enough to establish tribal court jurisdiction. Lexington's contract-based activities—reviewing and determining coverage under the policy at issue, for example— have not occurred *on tribal land*, as Lexington has never entered the Tribe's borders.

Both the Ninth and Seventh Circuits have considered similar contract-based disputes that were wrongfully initiated in tribal courts—against nonmember companies who, like Lexington, had never entered or engaged in relevant conduct on the tribal lands at issue—and affirmed decisions invalidating or enjoining those proceedings. In *McPaul*, for example, the Ninth Circuit affirmed a judgment declaring that tribal court jurisdiction could not be exercised over a nonmember insurance company whose "relevant conduct" (negotiating and issuing general liability insurance policies) occurred

1  "entirely outside of tribal land."  804 F. App'x at 757.  And in *Stifel, Nicolaus & Co. v.*
2  *Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 207–09 (7th
3  Cir. 2015), the Seventh Circuit affirmed a preliminary injunction stopping tribal court
4  proceedings concerning the validity of bonds issued by various nonmember financial
5  entities.  The court held that the nonmembers had not engaged in any relevant "activities
6  on the reservation" and that the tribal court action did "not seek redress for any of [their]
7  consensual activities on tribal land."  *Id.*

8       Like the nonmembers in *McPaul* and *Stifel*, Lexington has done nothing within
9  the Tribe's borders; its relevant conduct took place in its off-reservation offices.  And
10  the insurance policy itself was issued as part of a nationwide property insurance program
11  administered and maintained by a third party, Alliant Insurance Services, Inc.  The Tribe
12  participates in this program and bought insurance through Alliant, not directly from
13  Lexington.  Likewise, Lexington participates in this program through contracts with
14  Alliant and/or brokers to provide insurance and underwriting services to insureds who
15  meet established underwriting standards.  As a result, there was no direct contact
16  between Lexington and the Tribe when its policy was negotiated and issued.

17       Moreover, the Tribe's exercise of adjudicatory authority over disputes arising
18  from the insurance policy here cannot be justified by reference to its sovereign interests.
19  Because Lexington is a nonmember whose relevant conduct occurred far from the
20  reservation, regulating Lexington's conduct does not implicate tribal self-governance or
21  internal tribal affairs.  Although the Tribe regulates all sorts of reservation activities—
22  gaming, land use, construction and development, parades, taxation of intoxicating
23  beverages and cigarettes—it does not regulate insurance.  That fact undermines any
24  suggestion that the Tribe's exercise of authority over Lexington now is necessary to
25  protect sovereign interests.  *See Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125,
26  1138-39 (8th Cir. 2019) (affirming preliminary injunction enjoining tribal court
27  proceedings because "tribal regulation" of royalty payments under oil and gas leases was
28  "not necessary for tribal self-government or controlling internal relations," given that

such leases were regulated by the federal government, without "any role for tribal law or tribal government in that process").

This Court should apply established precedent and enjoin Defendants' continued exercise of unlawful authority. Courts regularly issue preliminary injunctions to stop unlawful tribal court actions similar to these, finding each of the elements necessary for a preliminary injunction satisfied. *See, e.g.*, *Washington v. Tribal Ct. for Confederated Tribes & Bands of Yakama Nation (Yakama)*, 2013 WL 139368, at \*3 (E.D. Wash. Jan. 10, 2013); *infra* Section IV(B)–(D) (collecting authorities). Here, as in those cases, nonmember Lexington is "likely to suffer irreparable harm if [it is] compelled to litigate the dispute in a forum which does not have jurisdiction." 2013 WL 139368, at \*3. Moreover, the Tribe will not be "deprived of a forum to entertain [its] claims because those claims" could be heard in another court, tipping the "balance of equities" in Lexington's favor. *Id.* And it is "in the public interest that the parties' dispute be resolved in the forum which is properly vested with subject matter jurisdiction." *Id.*

Lexington respectfully requests that the Court issue a preliminary injunction enjoining Defendants from exercising tribal jurisdiction over Lexington in the Tribal Court until this matter can be heard on the merits.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties and the Underlying Insurance Contracts

The Tribe is a federally recognized Indian tribe. Compl. ¶ 3, 30. The Tribe is located in Indio, California, and is situated on the Cabazon Indian Reservation (the "Reservation"), where it operates various businesses, including a casino. *Id.* ¶ 3. The Tribe is insured through a nationwide property insurance program known as the Tribal Property Insurance Program ("TPIP"), which is part of a larger property insurance program known as the Alliant Property Insurance Program ("APIP") that also insures municipalities, hospitals, and nonprofit organizations. *Id.* ¶ 31.

TPIP is maintained and administered by a third-party service called "Tribal First," which is a specialized program of Alliant Specialty Insurance Services, Inc. and/or

Alliant Insurance Services, Inc. (collectively, "Alliant"), which are California corporations located in California.  *Id.* ¶ 32.  In maintaining and administering TPIP, Alliant processes submissions for insurance; collects premiums; prepares and provides quotes, cover notes, policy documentation and evidences of insurance, and develops and maintains an underwriting file for each insured under TPIP.  *Id.*

Various insurance companies, including Lexington, participate in APIP (and its subprogram TPIP) by providing insurance and underwriting services at different layers of coverage and varying percentages of risk insured by those layers.  *Id.* ¶ 33.  Several of the layers provided to TPIP insureds are subject to aggregate coverage limits.  *Id.*  As a result, covered losses paid to one insured can reduce the coverage limit available to other insureds (including non-tribal entities) during any single policy period.  *Id.*

Through TPIP, the Tribe was provided with multiple property insurance policies by the participating carriers for the policy period from July 1, 2019, to July 1, 2020.  *Id.* ¶ 34.  The Tribe negotiated and obtained these property insurance policies through Alliant, based on underwriting guidelines established between Alliant and the TPIP carriers.  *Id.* ¶ 35.  The Tribe did not negotiate or obtain policies directly from Lexington or any other TPIP carrier.  *Id.* ¶ 36.  Lexington and the other TPIP carriers negotiated and entered into separate contracts with Alliant and/or brokers setting forth each TPIP carrier's obligations under TPIP.  *Id.* ¶ 37.  Lexington and the other TPIP carriers did not have direct contact with the Tribe before the issuance of its property insurance policies, and Lexington and other TPIP carriers learned of potential TPIP insureds, including the Tribe, only through Alliant.  *Id.* ¶ 38.  Alliant (not Lexington) processed the Tribe's submissions for insurance; collected premiums from the Tribe; prepared and provided quotes, cover notes, policy documentation and evidences of insurance to the Tribe; and developed and maintained an underwriting file for the Tribe.  *Id.*

Each property insurance policy provided through TPIP to the Tribe for the 2019-2020 policy period incorporates a master policy form referred to as the Tribal First Policy Wording, TPIP USA Form No. 15, which sets forth the terms, conditions, and

exclusions of coverage applicable to the Tribe (the "Policy"). *Id.* ¶ 39. The Policy does not contain any provision through which Lexington consents to the jurisdiction of the Tribe or its Tribal Court. *Id.* ¶ 40. Nor does the Policy contain any provision through which Lexington consents to the laws of the Tribe governing the interpretation of the Policy. *Id.* ¶ 41. The Policy does not specifically name any TPIP insured, including the Tribe, or any TPIP insurer, including Lexington. *Id.* ¶ 43. The Policy instead states that the "Named Insured" is "shown on the Declaration page, or as listed in the Declaration Schedule Addendum attached to this policy," and that Tribal First (*i.e.*, Alliant) maintains a "Named Insured Schedule" in its files. *Id.* ¶ 44.

Copies of the Policy and other related documents were prepared by Alliant and provided to the Tribe by Alliant (not Lexington). *Id.* ¶ 45; Compl. Ex. A. Included among those documents was a Declaration page associated with the Lexington property insurance policies issued to the Tribe. Compl. ¶ 45. In the Declaration page, the "Named Insured" is identified as "All Entities listed on file with Alliant Insurance Services, Inc.," and the "Mailing Address of Insureds" is identified as the one "on file with Alliant Insurance Services, Inc. c/o 325 E. Hillcrest Dr. Suite 250, Thousand Oaks, CA 91360." *Id.* The Tribe also received a document entitled "Tribal Property Insurance Program Evidence of Coverage." *Id.* ¶ 46. The Evidence of Coverage document is printed on "Tribal First Alliant Underwriting Solutions" letterhead and signed by Ray Corbett, Senior Vice President of Alliant Specialty Insurance Services. *Id.* The document indicates that it was prepared by Alliant "based on facts and representations supplied to [Alliant] by [the Tribe]." *Id.* It also indicates that any "Notification of Claims" must be sent to "Tribal First" by way of a P.O. Box in San Diego, California. *Id.*

**B.    The Tribe's COVID-19-Related Insurance Claims**

In March 2020, the Tribe temporarily suspended its casino operations because of the COVID-19 pandemic, and later that month submitted an insurance claim under the Policy to Tribal First, which transmitted the claim to Lexington. *Id.* ¶¶ 47-49. After receiving the Tribe's insurance claim and conducting an investigation, and finding no

evidence of "direct physical loss or damage" to any insured property, Lexington issued a letter to the Tribe denying coverage. *Id.* ¶ 51. The letter was prepared, drafted, and emailed by or on behalf of Lexington from outside the territorial boundaries of the Tribe, on non-tribal land. *Id.* On May 12, 2020, the Tribe's coverage counsel wrote to Lexington requesting immediate reconsideration and acceptance of coverage. *Id.* ¶ 52. Lexington responded on May 27 by letter, reaffirming its denial of the claim. *Id.* ¶ 53. A few months later, in November 2020, the Tribe sued Lexington in its own Tribal Court, asserting causes of action for declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing (bad faith). *Id.* ¶¶ 54, 57; *Cabazon Band of Mission Indians v. Lexington Ins. Co.*, Case No. 2020-0103 (the "Tribal Court Action"). Defendant Mueller presides over the Tribal Court Action.

## C.   The Tribal Court Action and Exhaustion of Tribal Remedies

Before a federal court may consider the question of "whether a tribal court has exceeded the lawful limits of its jurisdiction," the tribal court itself must first be given a "full opportunity" to evaluate and determine its own jurisdiction. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856–57 (1985). Once "tribal remedies" have been exhausted, a tribal court's determination of its own jurisdiction is subject to review by a federal court. *Id.* at 853. To exhaust tribal remedies, "tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987). Thus, exhaustion is complete when tribal appellate review is complete. *Id.*; *see also Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 844 (9th Cir. 2009); *Ford Motor Co. v. Todecheene*, 488 F.3d 1215, 1216–17 (9th Cir. 2007).

Lexington has exhausted all tribal remedies. At the outset of the Tribal Court Action, on January 19, 2021, Lexington made a limited special appearance and moved to dismiss the Tribal Court Action for lack of subject matter and personal jurisdiction under both Cabazon tribal law and federal law. Compl. ¶ 60. Defendant Mueller denied this motion on March 11, 2021. *Id.* ¶ 61.

Lexington timely requested a review of the Tribal Court order denying its motion to dismiss and filed a notice of appeal, which Defendants Washburn, Fletcher, and Skibine granted on May 18, 2021. *Id.* ¶ 62. Lexington simultaneously moved the Tribal Court to stay the Tribal Court Action pending the Tribal Court of Appeal's determination as to Lexington's notice of appeal and determination of the Tribal Court Appeal, which was granted on April 20, 2021, by the Tribal Court. *Id.* ¶ 63. After briefing and argument, Defendants Washburn, Fletcher, and Skibine, as judges of the Tribal Court of Appeals, affirmed the Tribal Court's denial of Lexington's motion to dismiss for lack of jurisdiction. *Id.* ¶ 65; Compl., Ex. B. The Tribal Court then issued a minute order lifting the stay on the Tribal Court Action. *Id.* ¶¶ 66–67.

Lexington filed its Complaint in this action on January 5, 2022. Upon Lexington's request, the Tribal Court granted a stay of the Tribal Court Action until this Court issues its ruling on this motion for preliminary injunction, or until May 18, 2022, whichever comes first. Hoffman Decl., Ex. A. Because this stay is temporary, the Tribal Court continues to exercise jurisdiction over Lexington today. Compl. ¶ 67.

### III.   LEGAL STANDARD

A preliminary injunction should be issued when a moving party establishes that (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities" tips in its favor, and (4) an "injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). A preliminary injunction should also be issued when the moving party raises "serious questions going to the merits" and the "balance of hardships . . . tips sharply towards" it, so long as the other factors (irreparable harm and public interest) are also satisfied. *Id.* at 1134–35. Further, in the Ninth Circuit, "the four elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Moroccanoil, Inc. v. Zotoz Int'l, Inc.*, 230 F. Supp. 3d 1161, 1170 (C.D. Cal. 2017) (citation omitted).

## IV.   ARGUMENT

Lexington seeks a preliminary injunction against Defendants to halt the ongoing Tribal Court Action, in which Lexington has unsuccessfully contested the Tribal Court's jurisdiction and will soon face burdensome discovery and motion practice.  Defendants, as judicial officials of the Tribe, have exercised and continue to exercise the Tribe's adjudicatory authority over Lexington in violation of federal law.  The unlawful use of authority in this manner will continue to result in irreparable harm to Lexington, who must continue to litigate and defend itself in the Tribal Court Action, unless and until an injunction is issued and the matter is heard on the merits.

### A.   Lexington Is Likely to Prevail on the Merits and Has Raised "Serious Questions" as to the Tribal Court's Jurisdiction

Because Indian "tribes do not, as a general matter, possess authority over non-Indians who come within their borders," the exercise of jurisdiction by a tribal court over a nonmember is "presumptively invalid."  *Plains Com.*, 554 U.S. at 328, 330 (citing *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 659 (2001)).  This general rule against tribal jurisdiction over nonmembers derives from the historically "unique and limited character" of tribal sovereignty.  *United States v. Cooley*, 141 S. Ct. 1638, 1642 (2021).  When tribes were incorporated into the United States, they became "dependent" sovereigns and "lost many of the attributes of sovereignty."  *Montana*, 450 U.S. at 563–64.  Among those lost attributes was the ability to freely and independently determine their external relations with nonmembers.  *See Cooley*, 141 S. Ct. at 1642–43 (citing *United States v. Wheeler*, 435 U.S. 313, 326 (1978)); *see also Plains Com.*, 554 U.S. at 328 ("This general rule restricts tribal authority over nonmember activities taking place on the reservation."); *Montana*, 450 U.S. at 564–65 ("[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.").

Lexington is a nonmember of the Tribe and has no say in the laws and regulations that govern the Tribe and the Tribe's lands and members.  Thus, the Tribal Court's exercise of jurisdiction over Lexington is presumptively invalid.  *See* 554 U.S. at 330.

In *Montana*, the Supreme Court recognized two narrow exceptions to the general rule against tribal jurisdiction over nonmembers. First, a tribe "may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. Second, a tribe may "exercise civil authority over the conduct of non-Indians on fee lands within its reservations when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566. The Supreme Court has explained that the *Montana* exceptions are "limited" and must not be construed in a manner that would "swallow the rule" or "severely shrink it." *Cooley*, 141 S. Ct. at 1645; *Plains Com.*, 554 U.S. at 330. Indeed, with "one minor exception, [the Supreme Court has] never upheld under *Montana* the extension of tribal civil authority over nonmembers on non-Indian land." *Nevada v. Hicks*, 533 U.S. 353, 359–60 (2001).

The "burden rests on the tribe to establish one of the exceptions to *Montana*'s general rule that would allow an extension of tribal authority to regulate nonmembers." *Plains Com.*, 554 U.S. at 330. The Tribe did not meet this burden, but the Tribal Court of Appeals nevertheless held that the exercise of tribal jurisdiction over Lexington was permissible. In doing so, the Tribal Court of Appeals misapplied the *Montana* exceptions, impermissibly expanding the reach of the Tribe's authority.

### 1. The *Montana* Exceptions Do Not Apply

#### a. The First *Montana* Exception Does Not Apply

The first *Montana* exception permits the exercise of tribal jurisdiction over the "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. Although Lexington has a contractual insurance relationship with the Tribe, the first *Montana* exception does not provide a basis for tribal jurisdiction because none of Lexington's relevant contractual activities occurred on the Tribe's land. The Supreme Court has explained that "*Montana*'s list of cases fitting within the

first exception indicates the type of activities the Court had in mind." *Strate v. A-1 Contractors*, 520 U.S. 456–57 (1997). And each of the cases on *Montana*'s list involves nonmember *activity on tribal land*. *See id.* at 446 ("*Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation . . . ."). The first case cited by *Montana* was *Williams v. Lee*, 358 U.S. 217 (1959). *Williams* concerned a payment dispute between tribal customers and a nonmember's general store on tribal land. *Id.* at 217–18. Tribal jurisdiction was affirmed because the nonmember business owner "was on the reservation and the transaction with an Indian took place there." *Id.* at 223. The remaining three cases cited by *Montana* concerned the taxation of businesses owned and operated by nonmembers on tribal lands. *See Morris v. Hitchcock*, 194 U.S. 384, 390 (1904) (permit tax on nonmember-owned livestock within the territorial boundaries of a tribe); *Buster v. Wright*, 135 F. 947, 950 (8th Cir. 1905) (permit tax for nonmember trading posts within the territorial boundaries of a tribe); *Washington v. Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. 134, 152–54 (1980) (tax on cigarette sales to nonmembers within tribal reservation).

In keeping with *Montana* (decided in 1981) and *Strate* (decided in 1997), the Court has observed that its "*Montana* cases have *always* concerned nonmember conduct *on the land*." *Plains Com.*, 554 U.S. at 334 (emphases added); *accord id.* at 328 (the "general rule" announced in *Montana* "restricts tribal authority over nonmember activities taking place on the reservation"); *Cooley*, 141 S. Ct. at 1643 ("We have subsequently repeated *Montana*'s proposition and exceptions in several cases involving a tribe's jurisdiction over the activities of non-Indians within the reservation."). Tribal jurisdiction over nonmember conduct "on the land" comports with the territorial limitations on tribal sovereignty. *See Plains Com.*, 554 U.S. at 330 (tribal sovereignty "centers on the land held by the tribe"); *Hicks*, 533 U.S. at 392 ("tribes retain sovereign interests in activities that occur on land owned and controlled by the tribe").

As the Ninth Circuit has stated, "tribal jurisdiction is, of course, cabined by

geography:  The jurisdiction of tribal courts does not extend beyond tribal boundaries." *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 938 (9th Cir. 2009).  And other federal appellate courts have observed that "*Montana* and its progeny permit tribal regulation of nonmember *conduct inside the reservation*."  *Jackson v. Payday Fin., LLC*, 764 F.3d 782, 783 (7th Cir. 2014); *accord Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*, 133 F.3d 1087, 1091 (8th Cir. 1998) ("Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations*.") (original emphasis).

The Seventh Circuit, for example, has held that *Montana*'s first exception does not apply to off-reservation conduct arising from contracts between a nonmember and a tribe or its members.  In *Jackson*, nonmember consumers brought a putative class action against several lenders owned by a tribal member who resided on tribal land.  764 F.3d at 768.  The lenders argued that the dispute could be decided only in tribal court under the first *Montana* exception because the nonmember consumers obtained loans from companies owned by a tribal member through contracts that included forum-selection clauses requiring litigation to be conducted in tribal court.  *Id.* at 781–82.  The Seventh Circuit held that the tribal court could not exercise jurisdiction over the loan dispute, explaining that the plaintiffs had "not engaged in *any* activities inside the reservation. They did not enter the reservation to apply for the loans, negotiate the loans, or execute the loan documents."  *Id.* at 782.  And "[b]ecause the Plaintiffs' activities d[id] not implicate the sovereignty of the tribe over its land and its concomitant authority to regulate the activity of nonmembers on the land, the tribal courts d[id] not have jurisdiction over the Plaintiffs' claims."  *Id.*

The Seventh Circuit reaffirmed this principle in *Stifel*, rejecting the tribal defendants' argument that "the court need not limit its consideration [of the *Montana* exceptions] to the on-reservation actions of [nonmembers]."  807 F.3d at 207.  The court had "made clear in *Jackson* . . . that *Plains Commerce Bank* 'circumscribed' the already narrow *Montana* exceptions" and "that a tribe's authority to regulate nonmember

conduct 'centers on the land.'" *Id.* Thus, the court upheld a preliminary injunction barring tribal judicial officials from conducting tribal court proceedings, given that none of the nonmember conduct at issue occurred "on tribal land." *Id.* at 207–09.

The story is much the same here. Lexington has "not engaged in *any* activities inside the reservation" to satisfy *Montana*'s first exception. *Jackson*, 764 F.3d at 782; *accord Stifel*, 807 F.3d at 208. Although Lexington has a contractual relationship with the Tribe, it has not engaged in any related activity on the Tribe's land. Instead, all conduct by Lexington concerning the insurance contract, including all review and consideration of the Tribe's claims, occurred remotely—far from tribal land. The Tribal Court Action, accordingly, has no relation to Lexington's conduct on tribal land.

Moreover, Lexington contracted with Alliant and other brokers, all nonmembers of the Tribe, to join a nationwide insurance program in which the Tribe participates. Compl. ¶¶ 11, 31–38. In its dealings with Alliant and these brokers, Lexington did not enter, or execute any documents on, the Tribe's land, nor did Lexington interact directly with the Tribe. *Id.* To the contrary, all of the activity relevant to the insurance program and issuance of the insurance policies was carried out by Alliant, off tribal land. *Id.* As the Seventh Circuit noted in *Jackson*, "[t]he question of a tribal court's *subject matter jurisdiction* over a nonmember . . . is tethered to the *nonmember's* actions, specifically the *nonmember's actions on the tribal land*." 764 F.3d at 782 n.42. As in *Jackson*, the tribal court has no subject matter jurisdiction here.

The Tribal Court of Appeals rejected the common holding of federal courts that "physical presence [on tribal land] is a requirement" for tribal jurisdiction, in part because it found "no language in any Supreme Court opinion barring tribal jurisdiction over nonmembers who knowingly and purposefully conduct business activities with Indian tribes . . . from afar." But in *Plains Commerce*, the Supreme Court explained that *Montana* has "always" concerned nonmember conduct "on the land," within the territorial boundaries of a tribe. 554 U.S. at 334. A nonmember's "physical presence" on tribal land is a requirement that inheres within the geographically limited nature of

1  tribal jurisdiction and sovereignty.

2         In short, where an insurer has not engaged in relevant activity on a tribe's land,

3  the first *Montana* exception does not apply.  *See Jackson*, 764 F.3d at 782; *Stifel*, 807

4  F.3d at 208.  Because Lexington has not engaged in any relevant activity on the Tribe's

5  land, the first *Montana* exception does not apply here.

6              **b.     The Second *Montana* Exception Does Not Apply**

7         The second *Montana* exception permits the exercise of tribal jurisdiction over a

8  nonmember whose conduct "threatens or has some direct effect on the political integrity,

9  the economic security, or the health or welfare of the tribe."  *Montana*, 450 U.S. at 566.

10  The Tribe has never asserted that this exception applies, and likewise, the Tribal Court

11  of Appeals did not consider or evaluate it.  There is a reason the Tribe has never argued

12  this point:  The second *Montana* exception does not apply here.

13         This exception has a particularly "elevated threshold."  *Plains Com.*, 554 U.S. at

14  341.  The challenged conduct "must do more than injure the tribe, it must 'imperil the

15  subsistence' of the tribal community," and the exercise of tribal jurisdiction over that

16  conduct must be "necessary to avert catastrophic consequences."  *Id.* (citations omitted).

17  The elevated threshold of the second *Montana* exception has not been met here.  The

18  nonmember conduct at issue does not threaten the political integrity, economic security,

19  or health or welfare of the Tribe; imperil the subsistence of the Tribe's community; or

20  require the exercise of jurisdiction to avert catastrophic consequences.  The second

21  *Montana* exception therefore does not provide a basis for jurisdiction over Lexington.

22              **c.     The Exercise of Tribal Jurisdiction Does Not Stem from the
23                      Tribe's Inherent Sovereign Authority**

24         Neither *Montana* exception applies for another, more fundamental reason:  The

25  Tribe's exercise of jurisdiction does not "stem from [its] inherent sovereign authority to

26  set conditions on entry, preserve tribal self-government, or control internal relations."

27  *Plains Com.*, 554 U.S. at 336–37.  This is a threshold requirement under *Montana*, as

28  tribes may regulate nonmember "activities or land uses" *only when* they "intrude on the

internal relations of the tribe or threaten self-rule." *Id.* at 334–35; *see also Strate*, 520 U.S. at 438, 459 (the *Montana* exceptions apply only where tribal adjudicatory or regulatory authority "is needed to preserve the right of reservation Indians to make their own laws and be ruled by them"); *Montana*, 450 U.S. at 564 (the "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes"). Thus, if the exercise of tribal jurisdiction over a nonmember "cannot be justified by reference to the tribe's sovereign interests," it is invalid. *Plains Com.*, 554 U.S. at 336.

The Supreme Court and several federal appellate courts have expressly applied this threshold requirement in deciding there is no tribal jurisdiction. In *Plains Commerce*, the Supreme Court found that a tribal court lacked jurisdiction over a dispute involving the sale of non-Indian fee land by a nonmember bank, explaining that regulating the sale of non-Indian fee land could not be justified by the tribe's sovereign interests in "protecting internal relations and self-government," because the "mere fact of resale" had not threatened those interests. 554 U.S. at 336–37. Similarly, in *Jackson*, the Seventh Circuit rejected the argument that "a nonmember's consent to tribal authority" was "sufficient to establish the jurisdiction of a tribal court," because the tribal court's jurisdiction over nonmembers must also "stem from the tribe's inherent sovereign authority." 764 F.3d at 783; *see also id.* (noting the dispute at issue, concerning off-reservation loan activity, did not implicate "*any* aspect of 'the tribe's inherent sovereign authority'"). The Eighth Circuit likewise held that a tribal court lacked jurisdiction over nonmember oil and gas companies accused of failing to pay royalties under leases with various tribal members, explaining that while the leases were "consensual relationships with tribal members," a "consensual relationship alone is not enough" to establish tribal jurisdiction. *Kodiak Oil*, 932 F.3d at 1138. Instead, the court explained that tribal jurisdiction had to stem from the tribe's sovereign interests, and the regulation of nonmember companies and their lease-related activity was "not necessary for tribal self-government or controlling internal relations." *Id.*

Gibson, Dunn &
Crutcher LLP

16

Here, the exercise of tribal jurisdiction over Lexington in the Tribal Court Action is not necessary to protect tribal self-government or to control internal relations and is therefore invalid. The Tribal Court Action concerns an insurance contract with a non-tribal insurer and its *off-reservation* conduct. As the Supreme Court and other federal appellate courts have emphasized time and again, "tribes retain sovereign interests in activities that occur *on land* owned and controlled by the tribe." *Hicks*, 533 U.S. at 392 (emphasis added); *Plains Com.*, 554 U.S. at 327 (tribal sovereignty "centers on the land held by the tribe and on non-tribal members within the reservation"); *see, e.g.*, *Stifel*, 807 F.3d at 207 ("The actions of nonmembers outside of the reservation do not implicate the Tribe's sovereignty."). That is simply not the case here.

As part of its analysis of the first *Montana* exception, the Tribal Court of Appeals found instructive the reference in *Plains Commerce* to *Williams v. Lee*, 358 U.S. 217 (1959), reasoning that *Williams* established that "contractual disputes are 'reservation affairs,'" over which tribal jurisdiction is "necessary in order for Indians to be able to make their own laws and be ruled by them." 554 U.S. at 332. But the Tribal Court of Appeals misread the holding in that case. *Williams* did not hold that *all* contractual disputes (regardless of whether they occurred on or off tribal lands) automatically constitute "reservation affairs" for which tribal jurisdiction is necessary.

Instead, *Williams* affirmed the territorial limits of tribal sovereignty. *Williams* concerned a tribal court's jurisdiction over a contract dispute arising from the sale of merchandise by a nonmember to a tribal member on the reservation. *Id.* The Supreme Court held tribal jurisdiction was proper because the nonmember was "on the Reservation and the transaction with the Indian took place there." *Williams*, 358 U.S. at 223. Put differently, tribal jurisdiction was proper because *Williams* involved a tribe's inherent sovereign authority over internal reservation affairs. The transaction at issue in *Williams* (1) was with a tribal member, (2) occurred at a store on tribal land, and (3) involved a tribal defendant in the underlying suit, and therefore implicated tribal laws governing tribal members and reservation affairs. No similar facts are present here.

If further confirmation were needed that this case does not implicate tribal sovereignty, it can be found in the fact that the Tribe does not regulate insurance in the first place.  By comparison, in the State of California, the authority to set insurance policy and regulate insurance is vested in the California Department of Insurance and Insurance Commissioner, whose duties include rulemaking, investigation, emergency regulations, and oversight of a broad range of insurance matters.  *See, e.g.*, Cal. Ins. Code §§ 12919–13555; *see also* 15 U.S.C. § 1011 ("Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that the silence on the part of Congress shall not be construed as to impose any barrier to the regulation or taxation of such business by the several States").  The absence of insurance regulation by the Tribe indicates that the exercise of tribal jurisdiction over Lexington's conduct under the insurance policy has never been necessary to protect tribal self-government or to control internal tribal relations.  A state or federal court of competent jurisdiction can just as easily decide the contractual dispute at issue here—without endangering or compromising the Tribe's sovereignty.  *See Kodiak Oil*, 932 F.3d at 1138 (rejecting application of first *Montana* exception where "complete federal control of oil and gas leases on allotted lands—and the corresponding lack of any role for tribal law or tribal government in that process—undermine[d] any notion that tribal regulation in this area [was] necessary for tribal self-government").  Indeed, state and federal courts have done just that in cases involving the same TPIP policy and other federally-recognized tribes.  *See Menominee Indian Tribe of Wisconsin, v. Lexington Ins. Co.*, No. 21-CV-00231-WHO, 2021 WL 3727070, at *14 (N.D. Cal. Aug. 23, 2021) (dismissing all claims with prejudice); *Yurok Tribe v. Lexington Ins. Co.*, No. CV2100805 (Cal. Super. Ct., Oct. 19, 2021) (same).[2]

This absence is also significant because "a tribe's adjudicative jurisdiction

---

[2]  The *Yurok Tribe* court order is attached to the concurrently filed Appendix of Certain Authorities, which includes authorities cited herein that are not readily available through online services.

[can]not exceed its legislative jurisdiction." *Strate*, 520 U.S. at 453; *see also Plains Com.*, 554 U.S. at 330 ("reaffirm[ing]" the principle that tribal courts lack jurisdiction to hear claims exceeding the bounds of a tribe's "legislative jurisdiction"). Because the Tribe does not regulate insurance and has not been granted regulatory authority by Congress over any aspect of the insurance industry, the Tribal Court cannot exercise adjudicative jurisdiction over Lexington's insurance activity. *See Jackson*, 764 F.3d at 783 ("[I]f a tribe does not have the authority to regulate an activity, the tribal court similarly lacks jurisdiction to hear a claim based on that activity.").

The Tribal Court of Appeals reasoned that the contract dispute at issue in the Tribal Court Action implicated the Tribe's inherent sovereign authority because the insurance contract "insur[ed] [the Tribe's] most important source of tribal revenues . . . necessary to fund programs essential to tribal self-government." But there is no casino exception to the presumption against the exercise of tribal jurisdiction. And the potential for economic harm here does not meet the "elevated threshold" for *Montana*'s second exception, which more relevantly requires that conduct "do more than injure the tribe." *Plains Com.*, 554 U.S. at 341 (explaining that the second *Montana* exception concerns conduct that "'imperil[s] the subsistence' of the tribal community"). Indeed, the Seventh Circuit considered and rejected a similar argument, explaining that to find that the second *Montana* exception applies "whenever the economic effects of [a tribe's] commercial agreements affect a tribe's ability to provide services to its members" would render the second exception "so broad, [that] it would swallow the rule." *Stifel*, 807 F.3d at 209. The exercise of tribal jurisdiction over Lexington, as erroneously conceived by the Tribal Court of Appeals, does just that.

The Tribal Court of Appeals construed *Montana* in a way that allows the Tribe authority over a nonmember based solely on the existence of a contractual relationship with the Tribe relating to Reservation property, disregarding the additional limiting requirements that a nonmember's relevant conduct must occur *on the land* held by the Tribe and that the exercise of tribal jurisdiction must be justified by reference to the

Gibson, Dunn & Crutcher LLP

Tribe's *sovereign interests*.  This construction of *Montana* is untenable.  It allows the Tribe to exercise jurisdiction over every nonmember it contracts with, regardless of whether the nonmember's relevant conduct occurs on tribal land, implicates tribal self-government and internal relations, or conforms to a tribe's legislative authority.  And with regard to the first *Montana* exception, it allows the Tribe to regulate the terms of its "consensual relationship" with a nonmember, when the first *Montana* exception is confined to regulating nonmember *conduct* on tribal land that implicates a tribe's sovereign interests and not the consensual relationships themselves.

Tribal courts presumptively lack jurisdiction over nonmembers, and the *Montana* exceptions create jurisdiction only in the rare case.  The Tribal Court of Appeals' decision flips that presumption on its head and makes tribal jurisdiction the rule rather than the exception.  But Tribal courts do not gain jurisdiction whenever a tribal member reaches outside of the reservation to enter into a commercial contract with a nonmember.

### 2. The Right to Exclude Does Not Apply

In addition to the two narrow *Montana* exceptions, the Ninth Circuit has crafted another narrow exception to tribal jurisdiction over nonmembers:  the right to exclude doctrine.  *Water Wheel*, 642 F.3d at 804–05.  Under that doctrine, a tribe's "sovereign authority over tribal land" provides it with the power to exclude nonmembers from the land, a power which "necessarily includes the lesser authority to set conditions on their entry through regulations." *Id.* at 811.

The Tribal Court of Appeals decided that the right to exclude doctrine permits the exercise of tribal jurisdiction over Lexington because Lexington "definitively conducts business on Cabazon lands by insuring Cabazon property located on . . . Cabazon lands," and "'setting foot' on the reservation can involve more than a mere physical presence in this era of long-distance business activities."  The Tribal Court of Appeals incorrectly applied the right to exclude doctrine, which does not permit the exercise of tribal jurisdiction under these circumstances.

The "right to exclude" does not apply here for much the same reason that the first

Gibson, Dunn &
Crutcher LLP

*Montana* exception does not apply:  The nonmember must have *physically entered* tribal land, and the nonmember's *physical presence on the land* must be at issue, thereby implicating that tribe's ability to manage its lands.  Indeed, the Ninth Circuit has repeatedly underscored that the right to exclude is connected to the nonmember defendant's presence on tribal land.  For example, in *Water Wheel*, the Ninth Circuit affirmed a tribe's regulatory jurisdiction over a nonmember based on the right to exclude doctrine, "where the non-Indian activity in question occurred on tribal land" and "the activity interfered directly with the tribe's inherent powers to exclude and manage its own lands."  642 F.3d at 812–14.  Similarly, in *Knighton v. Cedarville Rancheria of Northern Paiute Indians*, 922 F.3d 892, 901–04 (9th Cir. 2019), the Ninth Circuit held that a tribe had "authority to regulate [a nonmember employee's] conduct on tribal land pursuant to its sovereign exclusionary powers," given that the nonmember's "alleged conduct violated the [t]ribe's regulations" in place at the time of her employment, while she was "on tribal land."  And in *Grand Canyon Skywalk Dev. v. 'SA' Nyu Wa Inc.*, 715 F.3d 1196, 1204–05 (9th Cir. 2013), the Ninth Circuit found tribal jurisdiction "not plainly lacking" in regard to a non-tribal corporation and a tribal corporation's agreement to build and manage a tourist destination on tribal land, because the "essential basis for the agreement" was "access to" tribal land and the agreement "interfered with the [tribe's] ability to exclude [the non-tribal corporation] from the reservation."

Conversely, when a nonmember has not physically entered and engaged in activity on tribal land, the "right to exclude" does not apply.  *See McPaul*, 804 F. App'x at 757.  In *McPaul*, the Ninth Circuit held that because a nonmember insurance company's "relevant conduct—negotiating and issuing general liability insurance contracts to non-Navajo entities—occurred entirely outside of tribal land," a tribal court's jurisdiction could not be premised on the tribe's right to exclude.  *Id.*  As the district court in the *McPaul* case elaborated, the nonmember insurer "never set foot on reservation land, interacted with tribal members, or expressly directed any activity within the reservation's borders."  *Emp'rs Mut. Cas. Co. v. Branch*, 381 F. Supp. 3d

1144, 1149–50 (D. Ariz. 2019).

The Tribe's right to exclude does not apply to Lexington and therefore does not permit the exercise of tribal jurisdiction over it. Like the insurer in *McPaul*, Lexington has not entered into, sent employees to, maintained operations within, trespassed, or engaged in any activity on the Tribe's land. And the insurance contracts at issue neither provide Lexington access to tribal land nor contain terms affecting or impairing the Tribe's ability to exclude anyone from its land.

As part of its analysis of the "right to exclude" doctrine, the Tribal Court of Appeals found persuasive the Tribe's argument that it "could bar Lexington from insuring any and all tribal property, or alternatively, limit the types of tribal property to be insured or the amounts of such coverage." But this proposition conflates commercial discretion with sovereign authority. What the Tribe may or may not be able to do as a private party deciding the terms of a business relationship must not be confused with what it is narrowly permitted to do as a tribal sovereign seeking to impose its authority on a nonmember. *See San Manuel Indian Bingo and Casino v. NLRB*, 475 F.3d 1306, 1312–13 (D.C. Cir. 2007) ("[T]ribal sovereignty is not absolute, permitting a tribe to operate in a commercial capacity without legal constraint."). The Supreme Court has cautioned against "confus[ing] the Tribe's role as commercial partner with its role as sovereign" in this manner. *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 146 (1982); *see also Montana*, 450 U.S. at 565–66 ("Indian tribes have lost any 'right of governing every person within their limits except themselves,'" but can "exercise some forms of civil jurisdiction over non-Indians on their reservations"). When "a tribal government goes beyond matters of internal self-governance and enters into off-reservation business transaction[s] with non-Indians, its claim of sovereignty is at its weakest." *San Manuel*, 475 F.3d at 1313.

Because Lexington has not entered the Tribe's land, there is nothing for the Tribe to exclude, and thus the "right to exclude" doctrine does not permit the exercise of tribal jurisdiction over Lexington in the Tribal Court Action.

*   *   *

In short, the Tribal Court lacks jurisdiction over Lexington in the Tribal Court Action.  This Court should therefore find that the first prong of the preliminary injunction standard has been satisfied:  Lexington is likely to succeed on the merits, or at the very least has demonstrated "serious questions" about the validity of the Tribal Court's jurisdiction over it.  *See, e.g.*, *UNC Resources, Inc. v. Benally*, 518 F. Supp. 1046, 1053 (D. Ariz. 1981) (granting preliminary injunction and holding not only that "it seem[ed] very probable that [the moving party would] prevail on its claim that [a] Tribal Court lacks jurisdiction over it," but also that the moving party "present[ed] substantial and serious questions about the scope of Tribal Court civil jurisdiction").

## B. Lexington Will Continue to Suffer Irreparable Harm if Defendants Are Not Enjoined

To date, Lexington has had no choice but to defend itself in a court that has no lawful authority over it.  The Tribal Action is careening forward.  Lexington will soon have to appear and answer in Tribal Court, or else risk default.  And Lexington will likewise soon be required to engage in discovery, motion practice, and trial in a tribal court if injunctive relief is not granted.  These unfair and invalid proceedings will continue if an injunction is not issued.

Federal courts have recognized such ongoing and impending injuries as sufficient to warrant a preliminary injunction.  The Seventh Circuit in *Stifel*, for example, affirmed a preliminary injunction that was based in part on the irreparable harm that nonmembers would suffer by being "forced to litigate" in a "court that likely lacks jurisdiction over them."  807 F.3d at 194, 214.  This is because litigating in such a forum results in "unnecessary time, money and effort" and thus demonstrates the requisite "unwarranted and irreparable harm." *Koniag, Inc. v. Kanam*, 2012 WL 2576210, at *5 (D. Alaska July 3, 2012).  Courts have found that litigating in tribal court would irreparably harm nonmembers in a long list of other cases, too.  *E.g.*, *Yakama*, 2013 WL 139368, at *3; *McKesson Corp. v. Hembree*, 2018 WL 340042, at *10 (N.D. Okla. Jan. 9, 2018);

*Rolling Frito-Lay Sales LP v. Stover*, 2012 WL 252938, at *6 (D. Ariz. Jan. 26, 2012); *Kerr-McGee Corp. v. Farley*, 88 F. Supp. 2d 1219, 1233 (D.N.M. 2000).[3]  This Court should find the same here.

## C.    If They Are Enjoined, the Defendants Will Suffer No Serious Injury

The balance of hardships tips sharply in Lexington's favor.  If an injunction were issued, the only potential injuries to Defendants (and the Tribe) would be delay or dismissal of the Tribal Court Action.  Neither outcome, however, is sufficient to outweigh the harms of litigating in a court that lacks authority to exercise jurisdiction.

The threat of delay of the Tribal Court Action to Defendants and the Tribe is far less significant than the threat to Lexington of necessary and unlawful litigation.  In *Kodiak Oil*, for example, the Eighth Circuit affirmed a preliminary injunction granted to various oil and gas companies because without it they "would be forced to expend the time and cost associated with continuing litigation in a tribal court that lacks jurisdiction over them, whereas the only possible injury to the tribal court plaintiffs and tribal court officials from the injunction is delay." 932 F.3d at 1139.  The "balance of these factors, along with the oil and gas companies' strong likelihood of success on the merits," supported enjoining the tribal court proceedings.  *Id.*

Likewise, if the Tribal Court Action were dismissed, the Tribe would not be without remedy.  The Tribe would still be free to assert its claims in a state or federal court of competent jurisdiction, as courts have repeatedly observed in similar circumstances.  *E.g.*, *Yakama*, 2013 WL 139368, at *3; *McKesson*, 2018 WL 340042, at

---

[3] On top of incurring the costs of needless litigation before a court that lacks jurisdiction over it, Lexington might suffer another irreparable injury:  an adverse judgment.  If the Tribal Court enters judgment against Lexington, and it were forced to comply with the judgment, Lexington would be without recourse to recoup any payments made, because the Tribe would be shielded by tribal sovereign immunity.  *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *McCoy v. Salish Kootenai Coll., Inc.*, 785 F. App'x 414, 415 (9th Cir. 2019).  Under these circumstances, the "'imposition of money damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury.'"  *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011).

*10; *Koniag*, 2012 WL 2576210, at *5; *Rolling Frito-Lay Sales*, 2012 WL 252938, at *6; *UNC Resources*, 518 F. Supp. at 1053.[4]

### D.    An Injunction Against Defendants Is in the Public Interest

Federal courts consistently recognize that it is in the public's interest to prevent excessive exercises of tribal court jurisdiction and instead to have disputes resolved in their proper forums.  For example, in *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1153 (10th Cir. 2011), the Tenth Circuit held that a tribal court lacked jurisdiction to order a nonmember law firm to return paid fees to a tribe.  In affirming a preliminary injunction enjoining the tribal court's order, the Tenth Circuit was "not persuaded" that the invalid "exercise of tribal authority over . . . a non-consenting, nonmember, [was] in the public's interest." *Id.* at 1158.  Rather, as other courts have held, the public's interest is better served by enjoining unlawful exercises of tribal jurisdiction and ensuring disputes proceed in "properly vested" forums.  *See Yakama*, 2013 WL 139368, at *3 ("It is in the public interest that the parties' dispute be resolved in the forum which is properly vested with subject matter jurisdiction over the dispute."); *Koniag*, 2012 WL 2576210, at *5 ("There is a strong public interest in not allowing court proceedings to go forward in a tribunal that is clearly without jurisdiction over the proceedings."); *accord McKesson*, 2018 WL 340042, at *10; *Rolling Frito-Lay Sales*, 2012 WL 252938, at *6.  The same is true here.

## V.    CONCLUSION

For the reasons stated above, Lexington respectfully requests that the Court grant this preliminary injunction against Defendants.

---

[4] Because there is "no realistic likelihood of harm to [Defendants] from enjoining [their] conduct," the Court need not require a security bond from Lexington for purposes of Rule 65(c) of the Federal Rules of Civil Procedure.  *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citing *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)); *see also Barahona-Gomez*, 167 F.3d at 1237 (district courts have "discretion as to the amount of security required, if any").

Gibson, Dunn & Crutcher LLP

1     Dated:  March 4, 2022

2

3                                       Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: _____
                        Richard J. Doren
                     Matthew A. Hoffman
                     Bradley J. Hamburger
                     Daniel R. Adler
                     Kenneth Oshita

Attorneys for Plaintiff LEXINGTON
INSURANCE COMPANY